UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Emem Ufot Udoh,                                        Case No. 16cv4174 (PAM/HB)

                          Petitioner,

v.                                                     **MEMORANDUM AND ORDER**

Becky Dooley, Warden,

                          Respondent.

_____

This matter is before the Court on a Petition for a Writ of Habeas Corpus under 28

U.S.C. § 2254.  For the following reasons, the Petition is denied.

**BACKGROUND**

On August 19, 2014, a Hennepin County jury convicted Petitioner Emem Ufot

Udoh of two counts of second-degree criminal sexual conduct and one count of first-

degree criminal sexual conduct.  The charges arose out of contact Udoh had with his two

stepdaughters, 13-year-old K.K.W. and 11-year-old K.C.W.  The trial court sentenced

Udoh to 144 months' imprisonment on the first-degree conviction, and a concurrent 70

months on the second-degree convictions.   Udoh appealed, filing both an attorney-

authored brief and a pro se brief.  The Minnesota Court of Appeals determined that the

second-degree count as to K.K.W. was a lesser included offense of the first-degree count

as to the same child, and vacated that conviction, but otherwise rejected Udoh's

challenges.  State v. Udoh, No. A14-2181, 2016 WL 6867328 (Minn. Ct. App. 2016).  On

remand, the trial court sentenced Udoh to the same sentence it had previously imposed.

After the Minnesota Supreme Court denied review and the United States Supreme Court declined to issue a writ of certiorari, Udoh brought the instant Petition, claiming that his conviction runs afoul of the United States Constitution. Although his precise claims are difficult to decipher, the Petition can fairly be read to raise six grounds for relief. Ground One argues that an expert witness interfered with the jury's role by testifying that Udoh's conduct qualified as penetration. Ground Two claims that his convictions for both first- and second-degree criminal sexual contact as to K.K.W. violated his Double Jeopardy rights and caused the trial court to impose an unconstitutionally cumulative punishment, including lifetime supervised release. Ground Three contends that the trial court violated Udoh's Confrontation Clause rights by not allowing him to present extrinsic evidence that allegedly would have undermined the credibility of one of the victims. Ground Four claims that the trial court's determination regarding extrinsic evidence of the victim's veracity violated Udoh's due-process rights and his right to a fair trial. Ground Five argues that prosecutorial misconduct deprived Udoh of his due-process and equal-protection rights. And Ground Six contends that the trial court erred in denying Udoh's motion for a judgment of acquittal because there was insufficient evidence to convict him.[1] Udoh asks for an evidentiary hearing on his claims.

---

[1] Udoh's reply memorandum raises a new argument, that the prosecutor's use of the videos of the victims' interviews at CornerHouse, and those interviews themselves, as well as physical examinations of the victims, constituted unreasonable seizures under the Fourth Amendment. (Pet'r's Reply Mem. (Docket No. 18) at 23-25.) As a result, Udoh claims that he was unable to present a complete defense. (Id. at 24.) But the interviews and exams were not seizures as to Udoh; the only rights implicated in the interviews and

**DISCUSSION**

**A.      Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 et seq., a federal court "undertake[s] only a limited and deferential review of underlying state court decisions." <u>Collier v. Norris</u>, 485 F.3d 415, 421 (8th Cir. 2007). Indeed, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002) (citation omitted).  28 U.S.C. § 2254 provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Further, § 2254 states that "a determination of a factual issue made by a State court shall be presumed to be correct."  <u>Id.</u> § 2254(e)(1).  The burden is on the petitioner to "rebut[] the presumption of correctness by clear and convincing evidence." <u>Id.</u>

---

exams were the rights of the victims themselves.  Udoh has no standing to object to that alleged violation of rights.  And even if the claim had any legal merit, Udoh did not raise it in his Petition, nor did he present it to the state courts.  He is therefore procedurally barred from pressing the claim here.

Udoh asks that this Court review the state-court rulings de novo, arguing that the state courts failed to adjudicate the merits of Udoh's federal constitutional claims. But Udoh misapprehends the governing legal standards. Although a claim not adjudicated on the merits in state court is not entitled to deferential review, Brown v. Luebbers, 371 F.3d 458, 460-61 (8th Cir. 2004), the "pertinent question is not whether the [state court] explicitly discussed the [federal constitutional issues] but whether its decision contradicted applicable Supreme Court precedent in its reasoning or result." Cox v. Burger, 398 F.3d 1025, 1030 (8th Cir. 2005). A state court's "reasonable application of established federal law 'does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [these] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Id. (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (emphasis in original)). Even a cursory review of the trial court's and appellate court's decisions on the issues Udoh raises reveal that those courts either considered federal constitutional principles in evaluating Udoh's claims or that their determinations are not contrary to Supreme Court precedent, to the extent the claims implicate any federal constitutional rights. Thus, the claims he raises here were "adjudicated on the merits in State court" and the decisions of those courts is entitled to § 2254's highly deferential review.

Under that deferential review, "[a] federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir.

4

2005) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000)).  A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011).

**B.  Expansion of the Record and Evidentiary Hearing**

Udoh has attached several documents to his Petition that were not part of the record before the state courts.  He asks the Court to consider those documents by expanding the record under Rule 7 of the Rules Governing Habeas Corpus Cases under Section 2254.  But "[w]hen a petitioner seeks to introduce evidence pursuant to this rule, the conditions prescribed by § 2254(e)(2) must still be met." <u>Mark v. Ault</u>, 498 F.3d 775, 788 (8th Cir. 2007).  Under § 2254(e)(2), "[a] habeas petitioner must develop the factual basis of his claim in the state court proceedings rather than in a federal evidentiary hearing unless he shows that his claim relies upon a new, retroactive law, or due diligence could not have previously discovered the facts." <u>Cox</u>, 398 F.3d at 1030 (citing 28 U.S.C. § 2254(e)(2)).  The documents in Udoh's exhibits D-F and H are documents that Udoh could have previously discovered.  Indeed, these are documents that pre-date Udoh's trial, and include documents that he and his attorney likely possessed before trial.  They are not newly discovered evidence.  Rule 7 does not apply, and the Court will not consider documents that were not part of the state-court record.

Nor is Udoh entitled to an evidentiary hearing on his claims.  AEDPA provides that a habeas petitioner is entitled to a hearing only if he can show that his claim "relies on a new rule of constitutional law . . . or a factual predicate that could not have been

previously discovered through the exercise of due diligence" and that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the [petitioner] guilty . . . ." Id. § 2254(e)(2). As discussed, there is no newly discovered evidence here, nor is there a new rule of constitutional law that applies to Udoh's claims. His request for an evidentiary hearing is denied.

## C.     Merits

### 1.     Usurping the Jury's Role

During trial, the prosecutor elicited testimony from a physician who examined the victims that the conduct they described amounted to "penetration." Penetration is an element of first-degree criminal sexual conduct under Minnesota law. See Minn. Stat. § 609.342, subd. 1 (defining crime in relevant part as engaging in "sexual penetration"). Udoh contends that this testimony deprived him of a fair trial because the issue of whether there was penetration was for the jury to determine. Udoh's appellate counsel raised this issue on appeal, arguing that the trial court disregarded state law and state evidentiary rules in overruling Udoh's objection to this testimony. The Minnesota Court of Appeals determined that state precedent and rules of evidence did not prohibit an expert witness from testifying regarding penetration in this instance. The appeals court also determined that the testimony likely did not influence the jury's decision because "the record contained unobjected-to evidence of penetration." Udoh, 2016 WL 687328, at *4.

Udoh does not explain the federal constitutional basis for this claim. He cites no federal case holding that expert testimony regarding a matter for the jury's determination violates any federal constitutional principle or is contrary to clearly established Supreme Court precedent. Udoh's reply memorandum seems to indicate that he believes the state court's fact-finding was deficient as to this claim. But Udoh has not established that the state courts' factual determinations were unreasonable in light of the evidence presented at trial. This claim is without merit.

### 2. Double Jeopardy and Cumulative Punishment

Udoh argues that his conviction for the second-degree lesser included offense as to K.K.W. violated double jeopardy and caused the trial court to impose cumulative punishment, including a lifetime of supervised release. Of course, any double jeopardy issue was resolved by the appellate court's reversal of Udoh's second-degree conviction as to K.K.W., and the Court will not discuss this aspect of Udoh's claim further.

Udoh contends that the imposition of punishment as to the lesser included offense violates Supreme Court precedent. He did not raise any constitutional issue regarding his sentencing in his appeal, and thus this claim is likely procedurally barred. See Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996) (explaining procedural bar for claims not properly raised in state courts). But even if not barred, it is without merit. Although multiple punishments for the same offense violate Double Jeopardy, Brown v. Ohio, 432 U.S. 161, 165-66 (1977), Udoh was not subjected to multiple punishments for the same offense. Rather, he was sentenced to 144 months on the first-degree conviction as to K.K.W., and a 70-month concurrent sentence on the second-degree conviction as to

K.C.W. The trial court's decision that he should be on supervised release for the remainder of his life is not additional punishment. See, e.g., United States v. Watts, 519 U.S. 148, 154 (1997) (finding that sentence enhancements are not additional punishments for the same offense but rather only increase a sentence "because of the manner in which [the defendant] committed the crime of conviction"). Nor is the imposition of supervised release for life an impermissible collateral consequence of the vacated second-degree conviction. Rather, Minnesota law provides that defendants convicted of first-degree criminal sexual conduct under Minn. Stat. § 609.342 must be placed on supervised release "for the remainder of the offender's life." Minn. Stat. § 609.3455, subd. 7(b). The imposition of lifetime supervised release was thus mandatory and not an unconstitutional collateral consequence of the vacated second-degree conviction.

Minnesota's determination that certain sex offenders such as Udoh should be subject to lifetime supervision is not an additional or cumulative punishment under the Double Jeopardy Clause, and this portion of the Petition fails.

### 3. Impeachment of Child Victim

Two of the Petition's grounds arise from the trial court's determination that Udoh's counsel could not present extrinsic evidence of K.K.W.'s alleged propensity for lying or telling untrue stories. Udoh claims in Ground Three that this determination violated his Confrontation Clause rights and in Ground Four that it deprived him of his due-process rights and his right to a fair trial.

At trial, Udoh sought to offer the testimony of the victims' mother, a school social worker, and a police detective regarding K.K.W.'s past false statements and accusations.

8

The trial court denied the request, finding that this evidence was extrinsic evidence of a witness's propensity for truthfulness and was thus barred under the Minnesota Rules of Evidence. See Minn. R. Evid. 608(b) ("Specific instances of the conduct of the witness, for the purpose of attacking or supporting the witness' character for truthfulness, . . . may not be proved by extrinsic evidence.") The court of appeals recognized that evidentiary rules must be interpreted in light of the Sixth Amendment's Confrontation Clause, "which guarantees a defendant the opportunity to cross-examine the witnesses against him." Udoh, 2016 WL 687328, at *4. The court found that the evidence regarding K.K.W.'s prior instances of lying and telling "crazy stories" were not so closely related to K.K.W's allegations against Udoh to render their exclusion a violation of Udoh's right to present a complete defense or a violation of his right to confront witnesses against him. Id. at *5. As the court noted, Udoh cross-examined K.K.W. and she admitted to prior instances of lying. Thus, the jury heard evidence that K.K.W. was not always truthful, and the exclusion of testimony from other witnesses regarding specific instances of untruthfulness was within the trial court's discretion and was not a violation of Udoh's constitutional rights.

The Confrontation Clause gives a criminal defendant the right to cross-examine witnesses against him, "and, through cross examination, to expose the motivation of witnesses in testifying." United States v. Drapeau, 414 F.3d 869, 975 (8th Cir. 2005) (citing Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986)). But this right "is not without limits, even where the subject matter is bias." Id. "The Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and

expose [] infirmities through cross-examination.  <u>Delaware v. Fensterer</u>, 474 U.S. 15, 22 (1985).  "[T]he ability to cross-examine the witness through other means is a factor in considering whether the [trial] court violated confrontation rights."  <u>United States v. Sigillito</u>, 759 F.3d 913, 938 (8th Cir. 2014).  Indeed, the Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce <u>extrinsic evidence</u> for impeachment purposes."  <u>Nevada v. Jackson</u>, 133 S. Ct. 1990, 1994 (2013) (emphasis in original).

Udoh cross-examined K.K.W., and was permitted to ask her mother about her reputation for truthfulness.  Any other evidence in this regard would have been cumulative and likely would have confused the jury.  <u>Id.</u> at 1993-94.  The state courts correctly analyzed Udoh's claims in this regard and determined that the exclusion of extrinsic evidence regarding K.K.W.'s propensity for truthfulness was not improper under the Confrontation Clause.

Similarly, the state appellate court did not err in determining that the exclusion of this evidence was not a violation of Udoh's right to present a complete defense.  <u>See</u> <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (quotation omitted).  There is no clearly established Supreme Court precedent that the exclusion on state evidentiary grounds of a sexual abuse victim's prior false claims of assault violates the Constitution.  <u>Jackson</u>, 133 S. Ct. at 1991.  Thus, under § 2254, the state courts' resolution of this issue was not unreasonable.  This claim is denied.

### 4. Prosecutorial Misconduct

Udoh contends that the "cumulative effect" of prosecutorial misconduct resulted in a violation of his right to a fair trial. He does not cite specific examples of misconduct, leaving the Court to guess at what comments or conduct were allegedly improper.[2] In his pro se brief to the Minnesota Court of Appeals, Udoh argued that the prosecutor's use of the word "victim" to describe K.K.W. and K.C.W. in opening statements and closing arguments was improper, and that the prosecutor committed misconduct in questioning witnesses by asking leading questions and making suggestive comments. To the extent he seeks to raise any other instances of misconduct here, those claims are procedurally barred.

Under both Minnesota and federal law, prosecutorial misconduct will warrant a new trial only if it could reasonably have affected the verdict, United States v. Eldridge, 984 F.2d 943, 946 (8th Cir. 1993), or put another way, if it "impaired the defendant's right to a fair trial." Udoh, 2016 WL 687328 at *7 (quoting State v. Powers, 654 N.W.2d 667, 678 (Minn. 2003)). And prosecutorial misconduct rises to the level of a Constitutional violation, correctable on habeas, only if that misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).

---

[2] Udoh argues in his reply memorandum that his prosecutorial misconduct claim is supported by a USA Today investigation from 2010 that found that prosecutors throughout the United States "repeatedly" committed misconduct, and by a 2010 treatise opining that courts have not been effective at curbing prosecutorial misconduct. (Pet'r's Reply Mem. at 15-16.) General claims of nationwide prosecutorial misconduct that allegedly resulted in "hundreds of wrongful convictions" (id. at 16) are not proof that the prosecutor in Udoh's trial committed any misconduct.

The court of appeals determined that Udoh had not established misconduct, "let alone serious misconduct," and that, even if any of the conduct amounted to prosecutorial misconduct, the conduct did not influence the jury's decision to convict "because the other evidence of Udoh's guilt was strong. <u>Udoh</u>, 2016 WL 687328, at *7, 9. This determination is not an unreasonable application of federal law, nor is it an unreasonable determination of the facts in light of the evidence presented at the trial. Udoh is not entitled to relief on this claim.

### 5. Judgment of Acquittal

Finally, Udoh contends that the trial court erred in failing to grant his motion for judgment of acquittal because there was insufficient evidence to convict him. He argues that the denial of his motion deprived him of due process, because the accused has the right to be found not guilty unless each element of the crime is proved beyond a reasonable doubt. (Pet. (Docket No. 1) at 5.)

The Court of Appeals rejected Udoh's pro se appeal on this claim, finding that the evidence was sufficient to submit the case to the jury. Udoh, 2106 WL 687328, at *9. Udoh has not presented any meritorious legal or factual argument that would lead this Court to conclude otherwise. This claim is denied.

### D. Certificate of Appealability

Udoh may not appeal this Court's decision without a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). But a Certificate of Appealability is available only if a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by

demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003). Udoh's claims are without merit and reasonable jurists could not determine otherwise. He is therefore not entitled to a certificate of appealability.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1.    The Petition for a Writ of Habeas Corpus (Docket No. 1) is **DENIED**; and

2.    No certificate of appealability will issue.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: <u>July 5, 2017</u>

*s/ Paul A. Magnuson*

Paul A. Magnuson
United States District Court Judge
